UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON MICHAEL GARCIA,<br><br>Plaintiff,<br><br>v.<br><br>DELMAR GREENLEAF, et al.,<br><br>Defendants. | No. 2:16-cv-0269 JAM DB P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding through counsel with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Before the court is defendants' motion for summary judgment. For the reasons set forth below, this court will recommend the motion be denied.

**BACKGROUND**

**I.    Allegations in the Complaint**

Plaintiff complains of conduct that occurred in late 2014 and early 2015 when he was incarcerated at High Desert State Prison ("HDSP"). Plaintiff alleges that on December 14, 2014, he was involved in an altercation on the yard at HDSP. As a result of the altercation, plaintiff suffered injury to the left side of his face. Plaintiff contends that due to delays by defendants Dr. Delmar Greenleaf, Dr. Salahuddin Abdur-Rahman, and R.N. L. Jones in treating his injuries he

was unable to have surgery because his bones had started to heal improperly. As a result, plaintiff has a permanent deformity to his face, nerve damage, migraines, and constant and chronic pain on the left side of his face and his left eye.

## II. Procedural Background

This case is proceeding on plaintiff's original complaint filed here on February 10, 2016. (ECF No. 1.) On screening, the court found plaintiff stated cognizable claims under § 1983 against defendants Greenleaf, Abdur-Rahman, and Jones, but that he failed to state claims against the remaining defendants. (ECF No. 9.) Plaintiff was given the option of proceeding against those three defendants or amending his complaint. Plaintiff chose to proceed on the original complaint. On July 19, 2017, defendants filed an answer. (ECF No. 20.)

On June 28, 2018, defendants filed the present motion for summary judgment. (ECF No. 27.) Plaintiff filed an opposition (ECF No. 40) and defendants filed a reply (ECF No. 41) and objections to some of plaintiff's evidence[1] (ECF No. 42).

## MOTION FOR SUMMARY JUDGMENT

Defendants argue that they pursued medical care for plaintiff in a timely manner and that plaintiff did not suffer any harm from the alleged delay. Plaintiff contends there are issues of material fact regarding what defendants did, and did not do, to address his injuries and regarding what harm plaintiff suffered as a result of the delay in his treatment.

## I. General Legal Standards

### A. Summary Judgment Standards under Rule 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record,

---

[1] Because this court does not rely upon any of plaintiff's evidence challenged by defendants, the undersigned does not address defendants' objections.

2

including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party typically may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.

However, a complaint that is submitted in substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified complaint" and may serve as an opposing affidavit under Rule 56 as long as its allegations arise from personal knowledge and contain specific facts admissible into evidence. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (accepting the verified complaint as an opposing affidavit because the plaintiff "demonstrated his personal knowledge by citing two specific instances

where correctional staff members . . . made statements from which a jury could reasonably infer a retaliatory motive"); McElyea v. Babbitt, 833 F.2d 196, 197–98 (9th Cir. 1987); see also El Bey v. Roop, 530 F.3d 407, 414 (6th Cir. 2008) (Court reversed the district court's grant of summary judgment because it "fail[ed] to account for the fact that El Bey signed his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746. His verified complaint therefore carries the same weight as would an affidavit for the purposes of summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

To show the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted)

**B. Civil Rights Act Pursuant to 42 U.S.C. § 1983**

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of §1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

**II. Statements of Facts**

    **A. Undisputed Material Facts**

        1. Plaintiff Brandon Michael Garcia was incarcerated by the California Department of Corrections and Rehabilitation ("CDCR") at HDSP from 2012 to 2016. (SUF #1.[2])

////

////

---

[2] "SUF" is Defendants' Statement of Undisputed Facts. (ECF No. 27-1.) Plaintiff's response to the SUF is at ECF No. 40-1.

2. On December 14, 2014, plaintiff was involved in an altercation with another inmate at HDSP. As a result of the altercation, plaintiff sustained injuries to the left side of his face and his left eye. (SUF #2.)

3. Plaintiff was examined by Nurse Lipton at HDSP on the day of his injury. (SUF #3.)

4. At the request of Dr. Greenleaf, x-rays were obtained on December 15, 2014 at 12:20 p.m. The x-rays showed plaintiff had sustained a "left inferior orbital well fracture." Plaintiff spoke with defendant Dr. Greenleaf or defendant Dr. Abdur-Rahman before and after the x-rays were obtained. Dr. Greenleaf or Dr. Abdur-Rahman put in a request that plaintiff be transferred to an outside facility for further treatment on December 15, 2014. (SUF #4; ECF No. 27-3 at 7.)

5. In plaintiff's medical records, the following typed notation is dated December 15, 2014 at 11:00 a.m. and is signed by defendant Jones:

> Dr. Ludlow given CT results – Per Dr. Ludlow appt is not Urgent or Emergent. He req. X-Ray/CT films send [sic] to his office and pt will be scheduled within 10-14 days. Dr. Abdur-Rahman made aware of Dr. Ludlows req. and agrees to plan of care. Specialty will send all available films and schedule appt. Pt to remain in the CTC for prevention of further injury until Dr. Ludlow sees pt and clear plan of care is established.

(ECF No. 40-3 at 4.)

6. Plaintiff was examined in the emergency room at Renown Hospital on the evening of December 15, 2014. (SUF #5.)

7. Records from the December 15 hospital visit show that plaintiff was seen by Dr. Kennedy and was diagnosed with an orbital fracture. He was instructed to schedule a follow-up appointment with Dr. Bruce, an otolaryngologist, or "ENT," for the next day. (ECF No. 40-3 at 11; ECF No. 27-3 at 11; SUF #5.)

8. The final report from plaintiff's hospital visit shows that he had a "CT" scan on December 15, 2014. The results of the scan were reported at 5:41 p.m. and the doctor's impressions from the scan were signed at 6:09 p.m. that day. Those

6

|   |   |
|---|---|
| 1 | impressions were: (1) "Acute fractures of the floor and lateral walls of the left |
| 2 | orbit. No globe injury." (2) "Acute displaced fractures of the anterior and lateral |
| 3 | walls of the left maxillary sinus involving the anterior aspect of the left zygomatic |
| 4 | bone." (3) "Left-sided soft tissue swelling with subcutaneous air. No intracranial |
| 5 | air." (ECF No. 40-3 at 13.) |

9. On December 16, 2014, Dr. Greenleaf submitted an "emergent" request that plaintiff be transferred to Dr. Bruce, the ENT. (SUF #7; ECF No. 40-3 at 5; ECF No. 27-3 at 14.)

10. On December 16, 2014, plaintiff was seen by Dr. Abdur-Rahman. His notes state that "patient is awaiting emergent ENT evaluation which is supposed to occur today." (ECF No. 40-3 at 8.)

11. On December 19, 2014, Dr. Abdur-Rahman prepared a note reflecting that plaintiff was to "follow-up as per ENT with an appointment pending." (SUF #8.)

12. Plaintiff was scheduled to have surgery on December 29, 2014. (SUF #9.)

13. In a note dated December 30, 2014, plaintiff's primary care physician, Dr. Lankford, indicated plaintiff's surgery was rescheduled. (SUF #10.[3])

14. Plaintiff has never had surgery to address this injury.

15. An entry in plaintiff's medical record dated December 31, 2014 and signed by defendant Jones states: "attempt made by OT Smith to again contact Dr. Ludlow's office – per his staff he has not made a decision." (ECF No. 27-3 at 17.)

16. Dr. Greenleaf examined plaintiff on January 2, 2015. In his notes from that appointment, Greenleaf stated that plaintiff was supposed to have had a follow-up appointment with Dr. Bruce, the ENT, but that it was "not clear to me if the patient did see that specialist. It appears on MedSATS that he did not." Dr. Greenleaf

---

[3] Plaintiff objects to this fact. He states that he "denies" it because he did not have surgery. (ECF No. 40-1 at 2.) However, there is no dispute that plaintiff did not have surgery. Further, plaintiff stated this fact, which is simply that his medical record contains this entry, in his complaint. (ECF No. 1, ¶ 35.) Accordingly, the court accepts it as uncontested, despite the fact, as far as the court can tell, neither party has submitted a medical record confirming it.

|   |   |
|---|---|
| 1 | indicated that he would follow up with Utilization Management to determine when |
| 2 | plaintiff would be sent out to a surgeon.  (SUF #12; ECF No. 40-3 at 17.) |

17. An entry in plaintiff's medical record dated January 6, 2015 and signed by Jones states: "per OT Smith several attempts this week and last have been made to get plan of care on this date per 'Eva' at Ludlow's office CD was 'lost' they have requested this again from Renown." (ECF No. 27-3 at 17.)

18. Dr. Greenleaf examined plaintiff again on January 7, 2015. In these notes, Greenleaf states that plaintiff "had seen an ENT and they want to reevaluate him to be sure if he needed surgery or not.  The patient was under the impression that he was going to have surgery.  I had seen him on 12/16/201[4] after his return from ENT in Reno with Dr. Bruce, and he has been waiting for a followup visit." Greenleaf then stated that plaintiff was discussed at the meeting of the Correctional Treatment Facility ("CTC") on January 7, 2015 and "we found that the ENT office is not done reviewing all of the information on the patient that is on their electronic CD.  A followup visit is to be scheduled." Greenleaf also noted that plaintiff "complains of very significant pain."  Greenleaf stated that he told plaintiff they were waiting for a call from the ENT's office. (ECF No. 40-3 at 19.)

19. An entry in plaintiff's medical record dated January 8, 2015 and signed by Jones states: "decision to not wait for additional phone consults – will schedule face to face with ENT/ASAP." (ECF No. 27-3 at 17.)

20. On January 15, 2015, the Primary Care Provider Progress Note indicates that an ENT follow up was scheduled. (SUF # 17.)

21. Prior to January 29, 2015, plaintiff submitted an inmate appeal requesting that he be seen by a specialist for his facial fractures.  Dr. Abdur-Rahman interviewed plaintiff on January 29, 2015 in response to the appeal.  The doctor's post-appointment notes state that plaintiff is "awaiting follow-up with ENT/maxillary facial specialist which is pending." (ECF No. 27-3 at 39.)

////

22. On February 10, 2015, plaintiff was examined by ENT Dr. Ludlow. (SUF #18.) Notes provided to plaintiff's counsel by Dr. Ludlow's office show that plaintiff's primary complaint was pain from his facial injury. (ECF No. 40-3 at 24.)

23. A note prepared by Dr. Ludlow after the February 10, 2015 appointment states, "Displaced zygomatic fracture. At two months, I consider this too old to fix. He has no functional deficits, so I'm comfortable that his deformity is essentially cosmetic, but mild." (SUF #18; ECF No. 27-3 at 42.)

24. Defendant Abdur-Rahman prescribed Lyrica to attempt to address plaintiff's pain. (SUF #20; ECF No. 40-2, ¶ 16.)

25. Plaintiff complained of left-sided facial pain, numbness, and migraines to doctors at HDSP on March 19, 2015 and December 1, 2015. (ECF No. 27-3 at 44, 45.)

26. Plaintiff was transferred out of HDSP in 2016. Plaintiff was no longer under the care of any of the defendants after that time. (SUF #22.)

**B. Disputed Material Facts**

1. Were CT or X-ray results given to Dr. Ludlow on December 15, 2014 at or prior to 11:00 a.m.? If so, where did those test results come from and who directed that they be provided to Ludlow? If not, when were plaintiff's medical records provided to Dr. Ludlow?

2. Did Dr. Ludlow tell HDSP medical staff on December 15, 2014 that plaintiff's appointment with him was not urgent and should be scheduled within 10 to 14 days?

3. Why was plaintiff's scheduled surgery cancelled? Who was to perform that surgery?

4. Did Dr. Ludlow's office inform HDSP staff on December 31, 2014 that Dr. Ludlow had not made a decision about plaintiff's surgery?

5. Did Dr. Ludlow's office inform HDSP staff in early January 2015 that plaintiff's records had been lost and that his office had requested a new copy from Renown Medical Center?

9

6. Was a decision made by HDSP medical staff on January 8, 2015 to schedule an in-person appointment with an ENT as soon as possible? If so, why was plaintiff not seen by an ENT until over a month later?

7. Did plaintiff have any telemedicine conferences or in-person appointments with an ENT or other specialist regarding his facial injury at any time prior to the February 10, 2015 appointment with Dr. Ludlow?

8. Did the medication Lyrica render plaintiff "symptom free?"

### III. Analysis

#### A. Legal Standards for Deliberate Indifference to Medical Needs

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citing Whitley, 475 U.S. at 320). In order to prevail on a claim of cruel and unusual punishment, however, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or causing the deprivation to occur. Wilson, 501 U.S. at 298-99.

For an Eighth Amendment claim arising in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. See Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835.

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.

1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim. See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

**B. Is Summary Judgment Appropriate on the Eighth Amendment Claims?**

Defendants do not contend that plaintiff did not have a serious medical need as a result of his December 2014 injury. Rather, they argue that they were not deliberately indifferent to that need. They further argue that the alleged delay in plaintiff's care did not result in injury to plaintiff.

**1. Deliberate Indifference**

Initially, the court notes that the evidence submitted in this case fails to set out any clear story of the treatment, or lack thereof, that plaintiff received at HDSP for the facial injury he incurred on December 14, 2014. For example, it appears to be disputed, or at best unclear, about whether plaintiff's injury was ever considered by an ENT or any sort of specialist or surgeon prior to February 10, 2015 when plaintiff saw Dr. Ludlow. Further, it is unclear whether HDSP staff were attempting to get plaintiff an appointment with Ludlow or with Dr. Bruce, who had been recommended by the emergency room doctor at Renown. Another example of the lack of clarity is the apparent fact plaintiff was scheduled for surgery at the end of December 2014 but there is no indication who determined surgery was necessary, what sort of surgery he was supposed to have, who was to perform that surgery, or why it did not occur.

**a. Defendant Jones**

The evidence shows that Jones made a typed entry in plaintiff's medical record and dated it December 15, 2014 at 11:00 a.m. The entry states that plaintiff's CT results had been sent to Dr. Ludlow and that Dr. Ludlow had informed HDSP that plaintiff need not be seen on an urgent

12

basis. However, there is no indication plaintiff had a CT scan prior to December 15, 2014 at 11:00 a.m. Plaintiff's medical records show that he did not arrive at Renown until the evening of December 15 and that the report of his CT scan was not available until after 6:00 p.m. that day. Further, the x-rays taken that day at HDSP were taken at 12:20 p.m. so were also unavailable at 11:00 a.m. that day.

The medical records also show that Jones made entries dated December 31, 2014 regarding attempts to contact Dr. Ludlow's office. A notation dated January 8, 2015, states that plaintiff should have a "face to face w/ENT ASAP." However, in a progress note dated January 7, 2015, defendant Greenleaf stated that plaintiff "had seen ENT and they wanted to make sure if he needed surgery or not." If plaintiff had seen an ENT on or before January 7, which he denies, then it is not clear why the January 8 notation was made. Defendants did not provide a declaration from defendant Jones.

It is unclear just what Jones' involvement was in plaintiff's treatment or in any attempts to have plaintiff seen by an ENT or scheduled for surgery. There are too many materials facts in dispute to determine whether Jones acted with deliberate indifference to plaintiff's medical needs.

### b. Defendant Greenleaf

Dr. Greenleaf ordered x-rays for plaintiff on December 15. The records show that the next day, on December 16, 2014, Dr. Greenleaf submitted an "emergent" request that plaintiff be taken for an appointment with Dr. Bruce, the ENT recommended by the doctor in the ER. It is not clear why plaintiff was not taken to see Dr. Bruce then, or, apparently, at any time. Dr. Greenleaf appeared to recognize the problem when he saw plaintiff on January 2. He noted in plaintiff's medical record that it appeared plaintiff had not seen Dr. Bruce. However, just five days later, Greenleaf recorded a note that stated he had seen plaintiff on December 16 upon plaintiff's return from the appointment with Dr. Bruce. He stated that plaintiff was waiting for a follow-up appointment with Dr. Bruce. No medical records show that plaintiff saw Dr. Bruce on December 16 or at any time thereafter. Further, plaintiff indicates in his declaration that he never saw Dr. Bruce. (ECF No. 40-2.)

////

To add to the confusion, at the same time Dr. Greenleaf was considering that plaintiff should be having a follow-up appointment with Dr. Bruce, notations in plaintiff's prison medical records show that someone at HDSP was, apparently, pursuing an appointment for plaintiff with Dr. Ludlow, a different ENT, who also appears to practice in Reno. And, finally, medical records show someone determined plaintiff should have surgery on December 29. Yet, Dr. Greenleaf indicated in a note dated January 7 that no surgery was planned because an ENT had not yet determined it was necessary.

Dr. Greenleaf states that he had "very little" control over the scheduling and transportation of inmates for medical appointments. (ECF No. 27-3, ¶ 7.) However, "very little" does not mean he had no control. The facts are unclear about whether Dr. Greenleaf had the authority to require plaintiff's transport to a medical appointment, if necessary.

The record is replete with issues of material fact regarding Greenleaf's care for plaintiff. The question of whether Greenleaf was deliberately indifferent to plaintiff's medical needs should be resolved by a trier of fact.

### c. Defendant Abdur-Rahman

On December 16, 2014, plaintiff saw Dr. Abdur-Rahman. The doctor noted that plaintiff was awaiting an "emergent ENT evaluation which is supposed to occur today." On December 19, Abdur-Rahman prepared a note reflecting that plaintiff was to "follow-up as per ENT with an appointment pending." It is not clear whether Abdur-Rahman thought plaintiff had had an ENT appointment at that point and was awaiting a follow-up or whether he was noting a first ENT appointment for plaintiff. It is also not clear why on December 19 Dr. Abdur-Rahman did not do more to arrange to have plaintiff seen by an ENT.

There is no indication in plaintiff's medical records whether, or to what extent, Dr. Abdur-Rahman was involved in plaintiff's medical care between December 19, 2014 and January 29, 2015. In his declaration, plaintiff states that he saw Dr. Abdur-Rahman sometime around the middle of January. (ECF No. 40-2, ¶ 10.) In addition, Abdur-Rahman states in his declaration that he made arrangements for plaintiff to "participate in telemedicine conferences with an outside ENT on various occasions in 2015." (ECF No. 27-4, ¶ 4.) However, Dr. Abdur-Rahman

is not specific about the dates and plaintiff's medical records do not show he participated in any such conferences.  Further, Dr. Abdur-Rahman's contention that he had "very little" control over plaintiff's scheduling and travel is belied by the fact that he was able to order plaintiff transported to the hospital on December 15, 2014. (See ECF No. 27-4, ¶¶ 6, 3.)  Further, as noted above with respect to Dr. Greenleaf, "very little" control does not mean Dr. Abdur-Rahman lacked the authority to schedule a medical appointment for plaintiff and require his transportation to it.

Again, this court finds too many disputed and unclear issues of material fact regarding Abdur-Rahman's treatment of plaintiff.

### 2. Did the Delay in Plaintiff's Treatment Cause Harm?

Defendants rely on Dr. Ludlow's notes from the February 10, 2015 appointment to argue that plaintiff suffered no harm as a result of the delay in seeing an ENT.  However, Dr. Ludlow's note addresses only the fact that the physical harm to plaintiff was "cosmetic" and not "functional."  Dr. Ludlow did not opine on plaintiff's pain in that note.  Plaintiff contends he suffered and continues to suffer pain from the December 14 injury.

That is a question of fact that cannot be resolved on the record before this court.

### CONCLUSION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, either party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the

////
////
////
////
////

specified time may result in waiver of the right to appeal the district court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 11, 2019

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-civil rights/garc0269.msj